# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **PLUM CREEK TIMBERLANDS, L.P., ET AL.,** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:13CV00062 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **YELLOW POPLAR LUMBER** | ) | By: James P. Jones |
| **COMPANY, INC., ET AL.,** | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

*Francis H. Casola and Erin Boyd Ashwell, Woods Rogers PLC, Roanoke, Virginia, Aaron B. Houchens, Stanley, Houchens & Griffith, Moneta, Virginia, and T. Shea Cook, T. Shea Cook, P.C., Richlands, Virginia, for Plaintiffs Plum Creek Timberlands, L.P., and Highland Resources, Inc.; Wade W. Massie and Seth M. Land, Penn, Stuart & Eskridge, Abingdon, Virginia, for Defendants Range Resources-Pine Mountain, Inc., Range Resources-Appalachia, LLC, EQT Production Company, and EQT Production Nora, LLC; J. Scott Sexton, Gregory D. Habeeb, Kathleen L. Wright, and Daniel R. Sullivan, Gentry Locke Rakes & Moore, LLP, Roanoke, Virginia, for Defendants Edwin F. Legard, Jr., et al.; R. Lucas Hobbs, Elliott Lawson & Minor, P.C., Bristol, Virginia, for Unknown Descendants, etc., of G.W. Charles, et al., and Other Parties Unknown; and John M. Lamie, Browning, Lamie & Gifford, P.C., Abingdon, Virginia, for Defendants John J. Horschel, et al., Guardian ad Litem for Unknown Successors in Interest to Yellow Poplar Lumber Company, Inc., and Trustee for Yellow Poplar Lumber Company, Inc.*

This case involves a dispute over ownership of the gas estate in land located in this judicial district. The principal parties have moved for summary judgment, and their motions are now before me for decision. The plaintiffs, Plum Creek

Timberlands, L.P. ("Plum Creek") and its affiliate, Highland Resources, Inc. (which will be referred together as "Plum Creek/Highland"), have requested that summary judgment be entered in their favor and against the various defendants. The defendants, Range Resources-Pine Mountain, Inc., Range Resources-Appalachia, LLC, EQT Production Company, and EQT Production Nora, LLC ("Range/EQT") have requested that summary judgment be entered in their favor and against both the plaintiffs and their codefendants. Finally, the defendants Edwin F. Legard, Jr., Elizabeth Anne Cox, Trustee of the Elizabeth Anne Cox Trust, William G. Baker, Jr., Trustee of the Emily P. Baker Generation Skipping Trust, Matthew and Michael Trivett, individually and as Trustees of the Trivett Family Trust, Donald A. McGlothlin, Jr., Leah McGlothlin, Kevin T. McGlothlin, Wayne Burton, Mary LePerla, and Joseph LaPerla ("Baker/Trivett/McGlothlin") have moved for summary judgment in their favor and against the plaintiffs and their codefendants.[1]

The parties agree that the gas estate in question was owned by a corporation named Yellow Poplar Lumber Company, Inc. ("Yellow Poplar"), which went

---

[1] A fourth Motion for Summary Judgment has been filed by separate counsel for the unknown descendants, heirs, devisees, beneficiaries, and assigns of G.W. Charles and Phoeba Charles, Meda J. Owens, Teddy R. Owens, Arthur Coleman, and other unknown parties claiming ownership through a deed of C.G. Jackson. They rely upon the arguments presented by the Baker/Trivett/McGlothlin parties and will not be referred to separately.

Case 1:13-cv-00062-JPJ-PMS   Document 428   Filed 11/10/16   Page 2 of 23   Pageid#: 8298

bankrupt in 1928. The issue in this case is what became of that gas estate. There are at least four possibilities. Plum Creek/Highland claim that a 1929 deed from the bankruptcy trustee conveyed the gas estate to their predecessor in title. Range/EQT contend that the gas estate was conveyed prior to bankruptcy by deeds executed in 1921, 1924, and 1925 to Range/EQT's predecessor in title.[2] Baker/Trivett/McGlothlin argue that another deed from the bankruptcy trustee in 1930 conveyed the gas estate to their predecessor in title. Finally, it is possible that a certain portion of the gas estate remains an asset to be administered in the reopened bankruptcy case.

The parties' interest in this case is exploitation of the natural gas underlying the land, particularly the natural gas known as coalbed methane, which resides in coal. Although it is connected to coal, coalbed methane gas is recognized in Virginia as a distinct property estate that can be severed and owned separately from other interests in the land. *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 352-53 (4th Cir. 2014).

---

[2] Range/EQT assert an alternative claim to the coal bed methane in Tracts 10 and 11 based upon their ownership of the coal estate of those tracts. However, both a Virginia statute and the Virginia Supreme Court are clear that coalbed methane rights are not conveyed when a party merely acquires the coal estate of a given property. Va. Code Ann. § 45.1-361.21:1; *Swords Creek Land P'ship v. Belcher*, 762 S.E.2d 570, 572 (Va. 2014). Range/EQT have supplied no evidence otherwise suggesting that they acquired the coalbed methane gas estate for Tracts 10 and 11 when they acquired the coal estate. Accordingly, summary judgment must be granted against Range/EQT as to that ground of their claim of ownership.

Deciding these conflicting motions requires a careful review — in light of Virginia law — of the evidence submitted and a determination as to whether the dispute regarding ownership is susceptible to resolution on summary judgment.

## I. Procedural History.

Plum Creek[3] initially filed suit in the Circuit Court of Buchanan County, Virginia, seeking ownership of the subject gas estate. The suit named the defunct Yellow Poplar as the only defendant. Yellow Poplar failed to answer the suit, and the court declared Plum Creek the owner of all property previously owned by Yellow Poplar in Buchanan County.

When Range/EQT contested the validity of the court's order on the ground that they were not parties to the suit, Plum Creek obtained an order vacating the prior default judgment. Plum Creek then filed an Amended Complaint in state court against fifty-two different defendants, including Range/EQT and Baker/Trivett/McGlothlin. Range/EQT timely removed the case to the United States Bankruptcy Court for the Western District of Virginia. At the request of

---

[3] Highland Resources, Inc., was later added as the co-plaintiff in this court (Order, Jan. 28, 2015, ECF No. 314) on the basis that it owns separate gas rights in the subject property, which were transferred to Highland by Plum Creek.

Plum Creek, this court withdrew reference from the bankruptcy court. *See* 28 U.S.C. § 157(d).[4]

Thereafter, new parties were added and the present summary judgment motions were filed. However, before hearing argument on the motions, and in order to ensure that all necessary parties were before the court, I directed Plum Creek/Highland to seek to reopen the Yellow Poplar bankruptcy case in the District of South Carolina and add the bankruptcy trustee as a party to this action, since it had become evident that one possible resolution of the case is that the gas estate had never been conveyed by Yellow Poplar. The bankruptcy case was subsequently reopened and transferred to this court. Attorney John M. Lamie was appointed by this court as the substitute trustee for Yellow Poplar's estate.[5]

The motions for summary judgment have now been fully briefed and argued and are ripe for decision.

---

[4] Plum Creek also moved to remand the case to state court on the ground that this court lacked subject matter jurisdiction. I denied the motion, holding that the cause of action had its origins in the South Carolina bankruptcy case and thus arose under Title 11, U.S. Code, allowing federal jurisdiction. *Plum Creek Timberlands, L.P. v. Yellow Poplar Lumber Co.*, No. 1:13CV00062, 2014 WL 1289776, at *3 (W.D. Va. Mar. 31, 2014). I also denied all motions to dismiss filed by the various parties. *Id.* at *5.

[5] While Plum Creek/Highland did not object to the addition of a substitute bankruptcy trustee as a party to the case, it objected to the appointment of Mr. Lamie, which objection I overruled. *Plum Creek Timberlands, L.P. v. Yellow Poplar Lumber Co. (In re Yellow Poplar Lumber Co.)*, Nos. 1:13CV00062, 1:15CV00037, 2015 WL 5021692 (W.D. Va. Aug. 24, 2015).

5

II. Factual Background and Claims of the Parties.

The following facts are taken from the summary judgment record.

The land in question is located in Buchanan and Dickenson counties in the mountains of southwest Virginia. In 1906, Excelsior Coal and Lumber Corporation deeded more than 22,000 acres of land to Yellow Poplar (the "Excelsior deed"). Included within those 22,000 acres were the three tracts of land at issue in this case, which the Excelsior deed identified as Tracts 4, 10, and 11.

The Excelsior deed stated that Tract 4 was a 157-acre tract located in Dickenson County. Tract 10 was a 1,000-acre surface tract located in Buchanan County, and Tract 11 was a 3,877.5-acre mineral tract also located in Buchanan County. The entirety of Tract 10 overlays a portion of Tract 11.

In conveying the tracts of land to Yellow Poplar, the Excelsior deed reserved for Excelsior all of the "oil, coal and other minerals, except stone, fire clay, gas and cement rock." (ECF No. 331-1, p. 255.)[6] The parties thus agree that Excelsior conveyed the gas estate to Yellow Poplar. What happened next is in dispute.

---

[6] Many of the citations to the record in this Opinion are to copies of deeds that the parties have submitted in connection with the motions for summary judgment. For convenience, those citations will refer to the electronic docket ("ECF") location of the deed in question, together with the deed's page number.

A.  The G.B. Long and Big Sandy Conveyances.

The conveyances that serve as the basis for the claim brought by Range/EQT begin with a 1921 deed by which Yellow Poplar conveyed to G.B. Long eight tracts of land in Buchanan and Dickenson counties (the "Long deed").  Two of these eight tracts were derived from the Excelsior deed.  The Long deed did not convey any interest in Tracts 4, 10, or 11.  However, the Long deed did contain the following language, stating that it

> excepts and reserves from the operation of this conveyance and from all of the lands herein mentioned and conveyed, all of the coal, oil, gas, and other minerals, mining rights and easements, timber and timber rights, privileges and easements, and all other rights, privileges and easements, which are or have been reserved, excepted or contained in those certain instruments of conveyance to [Yellow Poplar] to which special reference is here made for a more particular description of said exceptions, reservations, rights, privileges and easements as follows:
>
> 1.  Deed by the Excelsior Coal & Lumber Co. . . . to Yellow Poplar Lumber Co., dated January 5, 1906.[7]

(ECF No. 331-6, p. 564.)

In 1924 and 1925, Yellow Poplar conveyed certain tracts of land to Big Sandy Fuel Corporation ("Big Sandy"), Range/EQT's predecessor in interest.  The

_____

[7]  This is the Excelsior deed.  The Long deed went on to identify three additional deeds.

1924 deed generally described the land that was to be conveyed, and it indicated that a survey would be completed so that the land could be described with more specificity in a later deed. The 1924 deed also conveyed the rights to gas and certain other minerals from the land previously conveyed to Long, "together with all other property rights and privileges reserved" in the Long deed. (ECF No. 331-2, p. 468.) The 1924 deed did not expressly convey any interest in Tracts 4, 10, or 11.

After the land was surveyed, Yellow Poplar executed a confirmatory deed in 1925 that contained a metes and bounds description of the land conveyed to Big Sandy. (ECF No. 331-3.) This deed stated that it was conveying 11,000.97 acres to Big Sandy, which was composed of three tracts containing 445.18, 788.86, and 9,766.93 acres, respectively. These three tracts do not contain any part of Tracts 4, 10, or 11. The 1925 deed further said that it conveyed

> coal, gas, stone, fire clay and cement rock in, on upon and under all the lands in the Counties of Dickenson and Buchanan, Virginia, heretofore sold by the party of the first part to G.B. Long, by deed dated March 7, 1921 . . . and excepted and reserved by the party of the first part in said deed, together with all other estates property and property rights, and privileges, rights and easements excepted and reserved in said deed. . . . It is the intention of this paragraph to release, quit claim and convey by the party of the first part to the party of the second part any and all reservations and exceptions contained in the deed aforesaid from the party of the first part to G.B. Long, dated March 7, 1921.

(*Id*. at p. 101.)  Because Range/EQT argues that the gas estates to Tracts 4, 10, and 11 were excepted and reserved in the Long deed, they contend that this language from the 1924 and 1925 deeds conveyed those estates to Big Sandy.

## B.  The W.M. Ritter Conveyance.

The conveyance that serves as the basis for Plum Creek/Highland's claim took place in 1929.  Prior to that conveyance, W.M. Ritter Lumber Company ("W.M. Ritter"), a West Virginia company that was Plum Creek's predecessor in interest, made a loan to Yellow Poplar.  To secure that loan, those parties executed a deed of trust on January 4, 1927, which gave W.M. Ritter a security interest in specific properties owned by Yellow Poplar.  The deed of trust also contained catchall language that gave W. M. Ritter a security interest in all of the property owned by Yellow Poplar "on the watersheds of Levisa River and Dismal Creek and their tributaries in said Buchanan County, Virginia, whether hereinabove described or referred to or not."  (ECF No. 342-30, p. 213.)

On November 7, 1928, Yellow Poplar was adjudicated bankrupt in Case No. B-1101 by the court then known as the Western District of South Carolina.[8]  The schedule of assets prepared in connection with the bankruptcy proceedings listed the surface of Tract 10 as an asset owned by Yellow Poplar, but it did not list Tracts 4 or 11.

---

[8]  South Carolina was reorganized as a single district in 1965.  79 Stat. 951 (1965). It had last been divided into two judicial districts in 1911.  36 Stat. 1087, 1123 (1911).

Case 1:13-cv-00062-JPJ-PMS   Document 428   Filed 11/10/16   Page 9 of 23   Pageid#: 8305

On September 21, 1929, as a result of Yellow Poplar's inability to pay the remainder of its debt owed to W.M. Ritter, Yellow Poplar's bankruptcy trustee executed a deed that conveyed various properties to W.M. Ritter. Like the deed of trust, this deed contained catchall language:

> It being the intention to embrace herein and convey hereby all of the tracts, pieces, or parcels of land, or interests in land owned by Yellow Poplar Lumber Company on the watersheds of Levisa River and Dismal Creek and their tributaries in said Buchanan County, Virginia, whether herein above described, or referred to, or not.

(ECF No. 342-27, p. 476.) The plaintiffs contend that Tracts 10 and 11 are located on a watershed of the Russell Fork and that the Russell Fork is a tributary of the Levisa River. As such, Plum Creek/Highland contend that this catchall language conveyed Tracts 10 and 11 to W.M. Ritter.

C. The C.G. Jackson Conveyance.

The conveyance that serves as the basis for the claim brought by Baker/Trivett/McGlothlin took place on October 16, 1930. After Yellow Poplar was declared bankrupt, the court ordered that Tract 10 be sold at public auction. On March 25, 1929, Tract 10 was auctioned off to C.G. Jackson and John Flannagan. However, the bankruptcy trustee was unable to close the sale, and the court ordered that Tract 10 be resold. That resale took place on October 1, 1930, at

another public auction, where C.G. Jackson purchased the tract. The deed conveyed:

> All that certain tract or parcel of land, situate, lying and being in Buchanan County, Virginia, on the waters of Big Paw Paw Creek of Russell Fork River, containing one thousand (1,000) acres, more or less, but sold by the boundary and not by the acre, and being the same tract or parcel of land heretofore obtained by the Yellow Poplar Lumber Company, a corporation, from Excelsior Coal and Lumber Corporation, by deed dated January 5, 1905, and recorded in the Clerk's Office of the Circuit Court of Buchanan County, Virginia, . . . being set out and described in said deed by metes and bounds as Tract No. 10, to which deed special reference is here made for a more particular description of said tract of land.

(ECF No. 342-31, p. 594.) It is undisputed that the 1930 deed describes Tract 10. The 1930 deed does not expressly say that it was conveying only a surface interest, but Plum Creek/Highland and Range/EQT argue that such a limitation can be inferred from the language of the deed and confirmed by extrinsic evidence.[9]

## III. Discussion.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To raise a genuine issue of material fact sufficient to avoid summary judgment, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

---

[9] For example, Tract 10 was referred to as a surface tract at different points throughout the record of the Yellow Poplar bankruptcy. (ECF No. 331-7, -14.)

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citation omitted). "When considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Id.* (quoting *Wightman v. Springfield Terminal Ry.*, 100 F.3d 228, 230 (1st Cir. 1996)).

Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element that is essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is not a disfavored procedural shortcut, but an important mechanism for weeding out claims and defenses that have no factual basis. *Id.* at 327. It is the affirmative obligation of the trial judge

Case 1:13-cv-00062-JPJ-PMS   Document 428   Filed 11/10/16   Page 12 of 23   Pageid#: 8308

to prevent factually unsupported claims and defenses from proceeding to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).

This is a case about deed interpretation that must be decided using Virginia's substantive law. Under that law, the plain language of the deed controls. *See Winn v. Aleda Constr. Co.,* 315 S.E.2d 193, 194 (Va. 1984). When construing such language, words should be given their natural and ordinary meaning. *Bailey v. Town of Saltville*, 691 S.E.2d 491, 493 (Va. 2010). Where the language of the deed, taken as a whole, is ambiguous and open to more than one interpretation, the court may permit extrinsic evidence to prove its meaning. *See Amos v. Coffey,* 320 S.E.2d 335, 337 (Va. 1984). The mere fact that the parties disagree as to the meaning of the language in the deed is not sufficient to show ambiguity. *See id.* While "contractual provisions are construed strictly against their author," *Am. Realty Tr. v. Chase Manhattan Bank,* 281 S.E.2d 825, 831 (Va. 1981), deeds must also be construed to give effect to the grantor's intent. *See Shirley v. Shirley*, 525 S.E.2d 274, 276 (Va. 2000).

The parties each claim ownership of the gas estates underlying all or some of the subject tracts. Each base their supposed ownership on different conveyances that occurred at different times. I start by analyzing the conveyances that occurred first in time: the 1921, 1924, and 1925 conveyances that serve as the basis for Range/EQT's Motion for Summary Judgment.

A.  1921 Long Deed and 1924 & 1925 Big Sandy Deeds.

Range/EQT claim they are entitled to rights in Tracts 4, 10, and 11.  Their argument has two prongs: first, that the 1921 Long deed reserved and excepted the gas rights to those three tracts for Yellow Poplar; second, that these gas rights were conveyed to Big Sandy through the 1924 and 1925 deeds.

It is clear that the 1921 Long deed did not convey, reserve, or otherwise address *surface* rights for Tracts 4, 10, or 11.  The deed conveyed eight tracts from Yellow Poplar to G.B. Long, and it describes those tracts in detail.  Range/EQT argue, however, that the Long deed did reserve, to Yellow Poplar, all *gas* rights for Tracts 4, 10, and 11.  They base this argument on the reservation clause of the Long deed, which states that Yellow Poplar "excepts and reserves from the operation of this conveyance and from all of the lands herein mentioned and conveyed, *all of the coal, oil, gas, and other minerals* . . . and all other rights, privileges and easements, which are or have been *reserved, excepted or contained in*" four prior deeds conveying land to Yellow Poplar.  (ECF No. 331-6, p. 564 (emphasis added).)  The first of the prior deeds is the Excelsior deed.  Range/EQT assert that, because the gas rights to Tracts 4, 10, and 11 were "contained in" the Excelsior deed, the Long deed has the effect of reserving these gas rights to Yellow Poplar.

Case 1:13-cv-00062-JPJ-PMS   Document 428   Filed 11/10/16   Page 14 of 23   Pageid#: 8310

In the 1924 Big Sandy deed, Yellow Poplar conveyed to Big Sandy "[a]ll its rights, title or interest . . . in and to the gas, stone, fire clay, and cement rock in, on, upon, or under, all of the lands" conveyed in the 1921 Long deed, "together with *all other property rights and privileges reserved in said deed*." (ECF No. 331-2, p. 468 (emphasis added).) This conveyance was confirmed by the 1925 Big Sandy deed, which further stated that "[i]t is the intention of this paragraph to release, quit claim and convey by [Yellow Poplar] to [Big Sandy] *any and all reservations and exceptions contained in the deed* aforesaid from [Yellow Poplar] to G.B. Long." (ECF No. 331-3, p. 101 (emphasis added).)

Range/EQT argue that, by this language, the 1924 and 1925 deeds conveyed to Big Sandy the gas rights to Tracts 4, 10, and 11. They reason that because the 1921 Long deed reserved to Yellow Poplar all the gas rights that were previously reserved in the Excelsior deed, and because the 1924 and 1925 Big Sandy deeds conveyed to Big Sandy all the rights that were reserved in the Long deed, the Big Sandy deeds therefore conveyed all the gas rights that had been reserved to Yellow Poplar in the Excelsior deed. These include the gas rights to Tracts 4, 10, and 11.

It is clear from their language that the 1924 and 1925 Big Sandy deeds intended to convey all the reservations contained in the 1921 Long deed. What is not clear, however, is whether the gas rights to Tracts 4, 10, and 11 were among the reservations contained in the Long deed.

15

An ambiguity exists where the language "'admit[s] of two or more meanings'" or can "'be[ ] understood in more than one way.'" *CNX Gas Co. LLC v. Rasnake*, 752 S.E.2d 865, 867 (Va. 2014) (quoting *Berry v. Klinger*, 300 S.E.2d 792, 796 (Va. 1983)). Here, the language of the Long deed's reservation clause is ambiguous. The clause states that it reserves "*all* of the coal, oil, gas, and other minerals" that were "reserved, excepted, or contained in" the Excelsior deed. (ECF No. 331-6, p. 564 (emphasis added).) This language could reasonably be interpreted to mean, as Range/EQT have argued, that the Long deed's reservation included *all* gas rights that were reserved to Yellow Poplar in the Excelsior deed, including gas rights for Tracts 4, 10, and 11. However, the clause also reserves these rights "from the operation of *this conveyance* and from all of the lands *herein* mentioned and conveyed." (*Id.* (emphasis added).) Tracts 4, 10, and 11 were indisputably not among the lands conveyed in the Long deed. Thus, this language could also reasonably be interpreted to mean that the Long deed's reservation clause applied only to the gas rights associated with lands that were part of the Long deed conveyance.

Summary judgment is only appropriate when the evidence is such that no reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248. That is not the case here. The reservation clause on which Range/EQT rely is ambiguous, and the very definition of an ambiguous contract is one that is "capable

of being understood by reasonable persons in more than one way." *CNX Gas Co.*

*LLC*, 752 S.E.2d at 867.   Furthermore, "ambiguit[ies] may be resolved by

ascertaining the intent of the parties reflected in the extrinsic evidence." *Robinson-*

*Huntley v. George Washington Carver Mut. Homes Ass'n*, 756 S.E.2d 415, 430

(Va. 2014); *see also Ott v. L & J Holdings, LLC*, 654 S.E.2d 902, 905 (Va. 2008)

(noting that a court must "admit[ ] parol evidence to resolve the ambiguity" and

"determine the intent of the parties").   The parties may thus adduce at trial

evidence that purports to prove that Yellow Poplar and G.B. Long "intended the

meaning" of the deed that would support each party's respective claim. *Robinson-*

*Huntley*, 756 S.E.2d at 429-30.   At this point, none of the parties have presented

extrinsic evidence of this intent sufficient to justify an entry of summary judgment

as to the claims based on the deeds to G.B. Long and Big Sandy.

Because a reasonable jury could interpret the Long deed in a way that either

supports or defeats Range/EQT's theory of the case, I will deny summary

judgment for Range/EQT.

### B.  1929 W.M. Ritter Deed.

The claim that occurs next in time is the one made by Plum Creek/Highland,

which argues that W.M. Ritter acquired an interest in Tracts 10 and 11 via the 1929

deed that conveyed land to W.M. Ritter from the Yellow Poplar bankruptcy estate.

While that deed does not explicitly describe Tracts 10 and 11, the plaintiffs claim

that those tracts were conveyed by the deed's catchall language (hereafter, the "catchall"), which conveyed all property "on the watersheds of Levisa River and Dismal Creek and their tributaries in said Buchanan County, Virginia, whether hereinabove described or referred to or not."  (ECF No. 342-30, p. 213.)

Plum Creek/Highland correctly assert that the catchall unequivocally conveys more property than that which was specifically identified in the 1929 deed.  *See Vicars v. First Va. Bank-Mountain Empire*, 458 S.E.2d 293, 295-96 (Va. 1995); *Amos*, 320 S.E.2d at 338.  However, there remains a question as to whether Tracts 10 and 11 are located "on the watersheds of Levisa River and Dismal Creek and their tributaries in said Buchanan County, Virginia" and thus included in this conveyance.  This question is one of fact.  *See Asberry v. Mitchell*, 93 S.E. 638, 639 (Va. 1917) (explaining that whether a grant applies to a given subject matter is a question of location, rather than construction, and is therefore a question of fact that must be decided by the jury using extrinsic evidence).

The parties appear to agree that Tracts 10 and 11 are located on the Russell Fork watershed.   Plum Creek/Highland cite numerous pieces of evidence purporting to show that the Russell Fork flows into the Levisa River.  They argue that, by definition, this makes the Russell Fork a tributary of the Levisa River, which in turn would mean that Tracts 10 and 11 are included in the catchall language.

Case 1:13-cv-00062-JPJ-PMS   Document 428   Filed 11/10/16   Page 18 of 23   Pageid#: 8314

The opposing parties argue that because the Russell Fork and Levisa River converge in Pike County, Kentucky, the Russell Fork is not a tributary of the Levisa River "in . . . Buchanan County." They also point out that, within the boundaries of Buchanan County, the Russell Fork and Levisa River are separated by a mountain range. The defendants assert that, due to this geographic separation, the local opinion in 1929 was that the Russell Fork was a tributary of the Big Sandy River, not the Levisa River.

Because both sides have advanced facts that support their respective positions, a jury must determine which has presented the more convincing evidence. I therefore deny summary judgment for Plum Creek/Highland.

### C. 1930 C.G. Jackson Deed.

A deed executed in 1930 conveyed Yellow Poplar's interest in Tract 10 to C.G. Jackson. Plum Creek/Highland and Range/EQT argue that this deed did not convey the gas rights to Tract 10 because the 1930 Jackson deed references the Excelsior deed, which in turn references a deed executed in 1893[10] from Prater Coal to Russell Fork Coal[11] that conveyed Tract 10 as a surface tract. However, there is no question that Russell Fork Coal owned Tract 10 in fee simple, even if

---

[10]  The deed from Prater Coal to Russell Fork Coal is undated, but it is referenced in other deeds as having been executed in 1893.

[11]  Russell Fork Coal subsequently conveyed the subject property to Excelsior Coal.

the coal, mineral, oil, and gas rights from that tract were originally conveyed separately from the surface rights. *See Commonwealth v. Forbes*, 197 S.E.2d 195, 199 (Va. 1973) ("[W]hen a property interest severed by an antecedent owner from the fee is acquired by a subsequent owner of the limited fee, the two property interests merge to revive the fee simple absolute.")

Russell Fork Coal conveyed its entire interest in Tract 10 to Excelsior, and although Excelsior reserved some subsurface rights from Tract 10 in its conveyance to Yellow Poplar, Yellow Poplar unquestionably acquired both the surface and gas rights to that tract. Thus, if neither the 1924 and 1925 Big Sandy deeds nor the 1929 W.M. Ritter deed conveyed the gas rights to Tract 10, those rights would have merged with the surface rights when the 1930 deed was executed. *See id.* I must analyze the 1930 deed with that merger in mind.

The 1930 deed to C.G. Jackson from Yellow Poplar's bankruptcy trustee conveyed "all my right, title and interest in and to [Tract 10]." (ECF No. 342-31, p. 594.) This language is clear and unambiguous. Although the Jackson deed referenced the Excelsior deed, which itself mentioned earlier deeds that conveyed Tract 10 as a surface tract, that reference was made only to clarify the boundaries of Tract 10. No language in any of the deeds suggests that the earlier deeds were referenced in an attempt to deviate from the Jackson deed's clear mandate to convey "all" of Yellow Poplar's interest in Tract 10.

The schedule of assets prepared in connection with Yellow Poplar's bankruptcy shows that Yellow Poplar owned only the surface of Tract 10 — not the subsurface rights to Tract 10 or Tract 11. Range/EQT argues that this omission is not only evidence that the 1930 Jackson deed conveyed only a surface tract, but that it proves that Yellow Poplar conveyed the subsurface rights to Tracts 10 and 11 prior to its bankruptcy. The bankruptcy schedule's omission of the Tract 10 and 11 subsurface rights is puzzling, but in light of the other relevant evidence presented by both sides, I will not grant summary judgment to Range/EQT on this ground.

### D. Final Analysis.

Where two deeds purport to convey the same interest in real estate, Virginia law gives priority to whichever interest was first recorded. Va. Code § 55-96(A)(1); *see also Cygnus Newport-Phase 1B, LLC v. City of Portsmouth*, 790 S.E.2d 623, 626 (Va. 2016) (noting that under Virginia's "race notice" statute, "the first to record an interest in real estate has priority over those who subsequently record"). Accordingly, the trier of fact must first determine whether the gas rights to Tracts 4, 10, and 11 were conveyed to Range/EQT via the 1924 and 1925 deeds to Big Sandy. If they were, then this first-in-time conveyance controls, and Range/EQT must prevail.

If the gas rights to Tracts 10 and 11 were *not* conveyed in the 1924 and 1925 deeds to Big Sandy, the trier of fact must next determine whether they were conveyed to Plum Creek/Highland via the 1929 deed to W.M. Ritter. If they were, then Plum Creek/Highland must prevail. In addition, if the trier of fact finds that the gas rights to Tract 4 were not conveyed in the 1924 and 1925 deeds to Big Sandy, then these rights were never conveyed and are now owned by Yellow Poplar's bankruptcy estate.

Finally, if the gas rights to Tracts 10 and 11 were *not* conveyed in the 1929 deed to W.M. Ritter, then the gas rights to Tract 10 must have been conveyed to Baker/Trivett/McGlothlin via the 1930 deed to C.G. Jackson.[12] Awaiting a factual determination of the contested predicate facts, the Baker/Trivett/McGlothlin Motion for Summary Judgment must also be denied.

IV. Conclusion.

For the foregoing reasons, the Range/EQT Motion for Summary Judgment (ECF No. 330) is DENIED; the Plum Creek/Highland Motion for Summary Judgment (ECF No. 341) is GRANTED IN PART AND DENIED IN PART, being granted as to Range/EQT's claim solely based upon ownership of the coal estate and otherwise denied; the Baker/Trivett/McGlothlin Motion for Summary

---

[12] The bankruptcy schedule's omission of the Tract 10 gas rights does not negate the 1930 C.G. Jackson deed's otherwise-unambiguous mandate to convey "all" of Yellow Poplar's interest in Tract 10.

Judgment (ECF No. 338) and the Motion for Summary Judgment by the Unknown

Descendants, etc., of G. W. Charles, et al. (ECF No. 339) are DENIED.

It is so **ORDERED**.

ENTER:  November 10, 2016

/s/  James P. Jones
United States District Judge