# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **PLUM CREEK TIMBERLANDS, L.P., ET AL.,** | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:13CV00062 |
| v. | ) ) | **OPINION AND ORDER** |
| **YELLOW POPLAR LUMBER COMPANY, INC., ET AL.,** | ) ) ) | By: James P. Jones United States District Judge |
| Defendants. | ) ) | |

*Francis H. Casola and Erin Boyd Ashwell, Woods Rogers PLC, Roanoke, Virginia, Aaron B. Houchens, Stanley, Houchens & Griffith, Moneta, Virginia, and T. Shea Cook, T. Shea Cook, P.C., Richlands, Virginia, for Plaintiffs Plum Creek Timberlands, L.P., and Highland Resources, Inc.; Wade W. Massie and Seth M. Land, Penn, Stuart & Eskridge, Abingdon, Virginia, for Defendants Range Resources-Pine Mountain, Inc., Range Resources-Appalachia, LLC, EQT Production Company, and EQT Production Nora, LLC; J. Scott Sexton, Gregory D. Habeeb, Kathleen L. Wright, and Daniel R. Sullivan, Gentry Locke Rakes & Moore, LLP, Roanoke, Virginia, for Defendants Edwin F. Legard, Jr., et al.; R. Lucas Hobbs, Elliot Lawson & Minor, P.C., Bristol, Virginia, for Unknown Descendants, etc., of G.W. Charles, et al., and Other Parties Unknown; and John M. Lamie, Browning, Lamie & Gifford, P.C., Abingdon, Virginia, for Defendants John J. Horschel, et al., Guardian ad Litem for Unknown Successors in Title to Yellow Poplar Lumber Company, Inc., and Trustee for Yellow Poplar Lumber Company, Inc.*

This case involves a dispute over ownership of the gas estate on land located in Buchanan and Dickenson Counties in Virginia. The principal parties previously

moved for summary judgment, and I denied summary judgment as to all parties.[1] The case is set to proceed to trial, and the parties have moved to exclude evidence and expert opinions offered by their opponents. The plaintiffs, Plum Creek Timberlands, L.P. ("Plum Creek") and its affiliate, Highland Resources, Inc. (which will be referred together as "Plum Creek/Highland"), have moved to exclude the expert testimony of six expert witnesses who will testify on behalf of the various defendants. The defendants, Range Resources-Pine Mountain, Inc., Range Resources-Appalachia, LLC, EQT Production Company, and EQT Production Nora, LLC ("Range/EQT") have moved to exclude the expert testimony of five expert witnesses who will testify on behalf of the plaintiffs and one expert witness who will testify on behalf of codefendants.[2] These motions are now before me for decision.

---

[1] I did grant summary judgment against Range/EQT as to their claim that they owned the gas estate based on their ownership of the corresponding coal estate. (*See* Op. & Order 3 n.2, ECF No. 428.) However, I declined to grant summary judgment against Range/EQT as to their claim that the gas estate was conveyed to their predecessor in interest, Big Sandy, via deeds executed in 1924 and 1925. Therefore, each party has a claim of ownership to be determined at trial.

[2] Those codefendants in this case are the defendants Edwin F. Legard, Jr.; Elizabeth Anne Cox, Trustee of the Elizabeth Anne Cox Trust; William G. Baker, Jr., Trustee of the Emily P. Baker Generation Skipping Trust; Matthew and Michael Trivett, individually and as Trustees of the Trivett Family Trust; Donald A. McGlothlin, Jr.; Leah McGlothlin; Kevin T. McGlothlin; Wayne Burton; Mary LePerla; and Joseph LaPerla (collectively, "Baker/Trivett/McGlothlin").

## I.  Procedural History & Factual Background.

I thoroughly reviewed the procedural history and facts of this case in my previous opinion denying summary judgment as to all parties and, as such, will not repeat them here.  (Op. & Order 4-11, ECF No. 428.)

## II.  Applicable Law.

Both Plum Creek/Highland and Range/EQT have moved to exclude the testimony of each other's and Baker/Trivett/McGlothlin's expert witnesses.  The Federal Rules of Evidence allow expert evidence under certain circumstances:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court concluded that the trial judge must serve in a "gatekeeping role" by ensuring that all expert evidence adduced at trial is both relevant and reliable.  509 U.S. 579, 589, 597 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147

(1999) (holding that *Daubert*'s "gatekeeping obligation" applies to all expert testimony). The proponent of the evidence bears the burden of proving admissibility — that is, relevance and reliability — by a preponderance of the evidence. *See Daubert,* 509 U.S. at 592-93 & n.10 (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)); Fed. R. Evid. 104(a).

The trial judge has "considerable leeway in deciding . . . how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co.*, 526 U.S. at 152. The *Daubert* Court identifies a number of nonexclusive factors that the trial judge should consider "where they are reasonable measures of . . . reliability," *id.*, including "(1) whether the particular scientific theory 'can be (and has been) tested'; (2) whether the theory 'has been subjected to peer review and publication'; (3) the 'known or potential rate of error'; (4) the 'existence and maintenance of standards controlling the technique's operation'; and (5) whether the technique has achieved 'general acceptance' in the relevant scientific or expert community." *United States v. Crisp*, 324 F.3d 261, 265-66 (4th Cir. 2003) (quoting *Daubert*, 509 U.S. at 593-94). The inquiry is flexible, however, and the trial court may consider other factors as it deems appropriate. *See United States v. Hassan*, 742 F.3d 104, 130 (4th Cir. 2014) (citing *Crisp*, 324 F.3d at 266). Ultimately, the trial court must ensure that an expert "employs in the courtroom the

same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.

## III. Discussion.

Plum Creek/Highland and Range/EQT have both filed motions to exclude expert testimony offered by each other and by Baker/Trivett/McGlothlin. I consider each motion in turn.

### A. Motions by Plum Creek/Highland.

The plaintiffs, Plum Creek/Highland, have moved to exclude expert evidence on five subjects. The evidence to which the plaintiffs object includes testimony by four expert witnesses proffered by Range/EQT and two expert witnesses proffered by Baker/Trivett/McGlothlin.

*1.*

First, Plum Creek/Highland seek to exclude the testimony of Range/EQT experts Ronald Mullennex, an expert in geology and hydrogeology, and Glenn Phillips, a land surveyor. Mullennex and Phillips will testify that the Russell Fork is not a tributary of Levisa Fork. This testimony goes to the issue of whether the deed executed in 1929 conveyed the gas estates to Tracts 10 and 11 to W.M. Ritter, Plum Creek/Highland's predecessor in interest.

Plum Creek/Highland argue that the opinions of both experts are "not based on relevant or reliable data, are the result of the application of unreliable principles

-5-

and methods not based on any authoritative source, and are otherwise unreliable and not scientifically reproducible." (Pls.' Mem. Supp. Mot. to Exclude 4-5, ECF No. 337.) Specifically, the plaintiffs complain that Mullennex and Phillips cannot show that the geological facts on which they base their opinion were true or influenced common wisdom at the time of the deed's execution, that the methodology used by Mullennex has not been sanctioned by any scientific authority, and that both experts' methodologies and resulting opinions are contradicted and undermined by other evidence. I disagree.

In arguing that the methodology employed by Mullennex is unreliable, Plum Creek/Highland focus on the fact that he does not "point to any scientific authority adopting or approving his methodology."[3] (*Id.* at 6-7.) However, a given methodology need not be associated with a specific scientific community in order to be deemed reliable, and general acceptance of a methodology is not a prerequisite to admissibility. *Daubert*, 509 U.S. at 594. Instead, the trial court need only determine that the expert, in applying that methodology to form his opinion, is using "the same level of intellectual rigor" that would be expected in his

_____

[3] The plaintiffs also argue that this methodology is necessarily unreliable because its application to a different set of streams would require a conclusion that contradicts the one previously conceded by Mullennex. (Pls.' Mem. Supp. Mot. to Exclude 6-7, ECF No. 337.) However, in making this argument, Plum Creek/Highland misapply the methodology: they consider only the size of each stream's respective watershed, whereas Mullennex bases his conclusion on the streams' flow and annual discharge rates in addition to their watershed areas. (Second Suppl. Expert Witness Disclosures 6-7, ECF No. 337-6.) Therefore, despite the plaintiffs' assertions to the contrary, this example does not prove that the methodology in question is unreliable.

-6-

field.  *Kumho Tire Co.*, 526 U.S. at 152.  The fact that the plaintiffs' own expert described the methodology in question as "highly unconventional, and not supported by the literature in the field of hydrology," (Report of James Gregory, Ex. I at 4, ECF No. 337-10), does not itself require a finding of unreliability, particularly in light of the fact that Mullennex filed a Supplemental Report rebutting the plaintiff's expert's concerns.  *See United States v. Barnette*, 211 F.3d 803, 816 (4th Cir. 2000) (affirming district court's finding that expert evidence was reliable where the opponent's only evidence supporting his position of unreliability consisted of two articles written by his own expert); *cf. United States v. Powers*, 59 F.3d 1460, 1471 (4th Cir. 1995) (affirming district court's exclusion of expert testimony where its proponent could not rebut evidence from the opponent that proved unreliability).  Mullennex and Phillips have experience and credentials sufficient to qualify them as an expert in geology and hydrogeology and as an expert land surveyor, respectively.  In the absence of evidence to the contrary — which Plum Creek/Highland fail to provide — these qualifications support a finding that these experts' methods are reliable.

Furthermore, to be admissible, an expert's testimony need only be relevant and reliable — it need not be incontrovertible.  "[C]ross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."

*Daubert*, 509 U.S. at 596. Indeed, "questions about [an expert]'s credentials and opinions" — such as those raised by Plum Creek/Highland — are "ideal fodder for vigorous cross examination." *Hassan*, 742 F.3d at 131 (citation omitted) (finding that the trial court did not abuse its discretion in admitting an expert's proposed evidence). Plum Creek/Highland may attack the methodology employed and conclusions drawn by Mullennex and Phillips via cross-examination and contrary evidence; it will be for the jury to determine whether they find these experts credible. *See U.S. v. Lowe*, 65 F.3d 1137, 1142 (4th Cir. 1995) ("Credibility determinations are within the sole province of the jury and are not susceptible to judicial review.") Accordingly, I will deny Plum Creek/Highland's motion to exclude the testimony of Mullennex and Phillips as to the geology and geography of the area at issue.

*2.*

Next, Plum Creek/Highland seek to exclude the testimony of Phillips, two other Range/EQT experts, attorneys Henry Keuling-Stout and Leonard Rogers, and Baker/Trivett/McGlothlin expert Harris Warner, also a lawyer. These experts will testify as to their interpretations of certain deeds and to the legal significance of the deeds' language. Specifically, all four of them will testify that the 1929 deed to W.M. Ritter did *not* convey the gas estate for the land in question; Phillips, Keuling-Stout, and Rogers will testify that the 1924 and 1925 deeds to Big Sandy

-8-

*did* convey the gas estate for the land in question; and Harris will testify both that the deeds to Big Sandy did *not* convey the gas estate for the land in question and that the 1930 deed to C.G. Jackson *did* convey the gas estate for the land in question.

Plum Creek/Highland argue that this collective testimony should be excluded because it "exceed[s] the permissible bounds of expert testimony and address[es] questions of law," which are the sole province of the court. (Pls.' Mem. Supp. Mot. to Exclude 10, ECF No. 337.) I agree.

Generally, "[t]he interpretation of a contract presents a question of law." *City of Chesapeake v. States Self-Insurers Risk Retention Grp., Inc.*, 628 S.E.2d 539, 541 (Va. 2006); *see also Fulton v. Henrico Lumber Co.*, 148 S.E. 576, 577 (Va. 1929) (noting the "general rule" that "documents must be construed by the court"). Where a contract is ambiguous and evidence of the surrounding circumstances supports conflicting interpretations, the meaning of the contract "becomes a mixed question of law and fact" to be submitted to the jury. *Id.* The question of whether a contract is ambiguous is also a question of law to be decided by the court. *Langman v. Alumni Ass'n of Univ. of Va.*, 442 S.E.2d 669, 674 (Va. 1994) ("The question whether a writing is ambiguous is not one of fact but of law.")

The deeds about which these experts purport to testify are ambiguous. Indeed, the parties' competing claims have arisen precisely because the deeds are ambiguous. By testifying as to the meanings of the various deeds, however, these witnesses would necessarily opine that the deeds are unambiguous. Thus, these opinions would both invade the province of the court by addressing the question of the deeds' ambiguity and directly contradict my decision that the deeds are ambiguous.

Furthermore, opinion testimony regarding the meanings of the deeds at issue would constitute unhelpful legal conclusions. Under the circumstances, the meaning of each deed is decisive of the outcome of the case. Because the deeds are ambiguous, their meaning is a mixed question of law and fact on which it would be appropriate to offer extrinsic evidence.[4] *See Fulton*, 148 S.E. at 577 (noting that "where the document to be construed is ambiguous" and there are "material conflicts in [the] admissible parol testimony, . . . the interpretation of the documents becomes a mixed question of law and fact which it is necessary to submit, as to the question of fact, to a jury"). Although the parties are free to present extrinsic evidence as to the parties' intentions, their witnesses are not free to opine on the legal significance of the deeds themselves. "[O]pinion testimony that . . . draws a legal conclusion by applying law to the facts is generally

---

[4] I address the admissibility of extrinsic evidence *infra*, at III.A.3.

inadmissible." *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006); *see also Forrest Creek Assocs., Ltd. v. McLean Sav. & Loan Ass'n*, 831 F.2d 1238, 1242 (4th Cir. 1987) (finding that "the district court was correct in excluding expert testimony proffered [sic] . . . for the purpose of interpreting" a contract clause, whose "proper interpretation is a question of law"). This is because such testimony "does not help the jury . . . because it supplies the jury with no information other than the witness's view of how the verdict should read." *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) (internal quotation marks and citations omitted); *see also United States v. Perkins*, 470 F.3d 150, 157 (4th Cir. 2006) (stating that "[t]he touchstone of admissibility of testimony that goes to the ultimate issue . . . is helpfulness to the jury"). By testifying as to the legal significance of the deeds in question, these witnesses would simply be providing the jury with their individual opinions regarding which party should prevail. Accordingly, I will grant Plum Creek/Highland's motion to exclude the testimony of Phillips, Keuling-Stout, Rogers, and Warner as to the meaning of the deeds in this case.

*3.*

Plum Creek/Highland also move to exclude the testimony of Phillips, Keuling-Stout, Rogers, Warner, and Baker/Trivett/McGlothlin expert Anthony Scales, a geologist, on the ground that these experts' opinions are based on

evidence extrinsic to the deeds at issue. The plaintiffs argue that "[b]ecause these deeds are unambiguous, the Court should exclude such testimony as inadmissible parol evidence." (Pls.' Mem. Supp. Mot. to Exclude 12, ECF No. 337.)

As I note above, whether a deed contains an ambiguity is a question of law to be decided by the court. *Langman*, 442 S.E.2d at 674. An ambiguity exists where the language "admit[s] of two or more meanings" or can "be[ ] understood in more than one way." *CNX Gas Co. v. Rasnake*, 752 S.E.2d 865, 867 (Va. 2014) (internal quotation marks and citations omitted). Where the language of a deed, taken as a whole, is ambiguous and open to more than one interpretation, the court may permit extrinsic evidence to prove its meaning. *See Amos v. Coffey,* 320 S.E.2d 335, 337 (Va. 1984); *see also Robinson-Huntley v. George Washington Carver Mut. Homes Ass'n*, 756 S.E.2d 415, 418 (Va. 2014) (noting that "ambiguit[ies] may be resolved by ascertaining the intent of the parties reflected in the extrinsic evidence"); *Ott v. L & J Holdings, LLC*, 654 S.E.2d 902, 905 (Va. 2008) (noting that a court must "admit[ ] parol evidence to resolve the ambiguity" and "determine the intent of the parties"). The mere fact that the parties disagree as to the meaning of the language in the deed is not sufficient to show ambiguity. *See id.* Instead, the deciding factor is whether the deed is "capable of being understood by reasonable persons in more than one way." *CNX Gas Co.*, 752 S.E.2d at 867.

I previously found that the 1921 deed to G.B. Long is ambiguous. (Op. & Order 16, ECF No. 428.) Plum Creek/Highland argue here that because the 1924 and 1925 deeds to Big Sandy are not ambiguous, parol evidence regarding their meaning is inadmissible. This argument oversimplifies the issue, however. Both Big Sandy deeds incorporate the ambiguous Long deed by reference, and as a result, the legal significance of the Big Sandy deeds is unclear. It is clear from their language that the 1924 and 1925 Big Sandy deeds intended to convey all the reservations contained in the 1921 Long deed. Because the Big Sandy deeds are not *themselves* ambiguous, extrinsic evidence regarding their meaning is improper. However, it is equally clear that the 1921 Long deed — which is incorporated into the Big Sandy deeds, and on which Range/EQT's claims are based — *is* ambiguous, and as such, the parties may properly present extrinsic evidence regarding its meaning.

I now find that the 1929 deed to W.M. Ritter, specifically its "catchall" clause, is also ambiguous. The clause states that Yellow Poplar intended to convey "all of [its] tracts, pieces or parcels of land, or interests in land . . . on the watersheds of Levisa River and Dismal Creek and their tributaries in said Buchanan County, Virginia." (ECF No. 337-22, p. 476.)[5] This language could reasonably be interpreted to include, as Plum Creek/Highland have argued, all of

---

[5] For the sake of convenience, citations to deeds will refer to the electronic docket ("ECF") location of the deed in question, together with the deed's page number.

-13-

Yellow Poplar's land located in Buchanan County, which land was *also* located on a watershed or tributary of Levisa River or Dismal Creek. However, this same language could also reasonably be interpreted to include, as the defendants have argued, all of Yellow Poplar's land that was located on a watershed or tributary of Levisa River or Dismal Creek, which *watershed or tributary* was located in Buchanan County. Because the language of the Ritter deed lends itself to two reasonable interpretations, it is ambiguous, and the parties may properly present extrinsic evidence regarding its meaning.

Accordingly, I will deny Plum Creek/Highland's motion to exclude the testimony of the subject experts to the extent that these experts offer extrinsic evidence regarding the 1921 Long and 1929 Ritter deeds, but grant the motion to the extent they offer extrinsic evidence regarding the 1924 and 1925 Big Sandy deeds.[6]

*4.*

Plum Creek/Highland next move to exclude the testimony of Keuling-Stout, Rogers, and "any other witness" that Range/EQT have "title to the subject gas based on a coal title," on the ground that this theory of ownership is contrary to

---

[6] This ruling does not affect my decision, *supra* at III.A.2, to exclude the opinions of experts to the extent that they offer opinions on the legal significance and meanings of the deed language at issue. In the event the experts can testify regarding relevant extrinsic evidence, such extrinsic evidence would not be excludable. Accordingly, I have decided separately that the extrinsic evidence testimony of Mullennex and Phillips, *supra* at III.A.1, and Scales, *infra* at III.A.5, is not excludable.

Virginia law.  (Pls.' Mem. Supp. Mot. to Exclude 14, ECF No. 337.)  I agree, and I accordingly granted summary judgment against Range/EQT as to their claim of ownership on this ground.  (Op. & Order 3 n.2, ECF No. 428.)  I will therefore deny Plum Creek/Highland's motion to exclude expert testimony on this specific theory of ownership as moot.

*5.*

Finally, Plum Creek/Highland move to exclude the testimony of Baker/Trivett/McGlothlin expert Anthony Scales, a geologist and author of two books on natural history.  Scales will testify that, in his opinion, "it is unlikely" the parties to the 1929 Ritter deed "considered the Russell Fork watershed and the Levisa River/Dismal Creek watershed to be the same watershed; and, it is unlikely that a reference to the 'Levisa River watershed,' 'in Buchanan County' would have been considered to include property in the Russell Fork watershed."  (Report of Anthony Scales, Ex. N at 1-2, ECF No. 337-21).  His testimony goes to the question of whether the 1929 deed conveyed the gas estate of Tracts 10 and 11 to W.M. Ritter.

Plum Creek/Highland argue that this testimony should be excluded because Scales "asks the wrong question," and his opinion "is outside of his area of expertise."  (Pls.' Mem. Supp. Mot. to Exclude 16, ECF No. 337.)  Scales describes the salient question as follows: "at the time the referenced deed was

-15-

written . . . would a citizen and/or businessman in Southwest Virginia consider a reference to 'watersheds of Levisa River and Dismal Creek' as including the Russell Fork?" (Report of Anthony Scales, Ex. N at 1, ECF No. 337-21.) Plum Creek/Highland first assert that this question mischaracterizes the 1929 deed because it omits part of the catchall clause; the complete phrase reads "on the watersheds of Levisa River and Dismal Creek *and their tributaries in said Buchanan County*." (ECF No. 337-22, p. 476 (emphasis added).) They also argue that the hypothetical interpretation of a "citizen or businessman in Southwest Virginia" is "not indicative as to the intention" of the parties, given that the parties were "two major out-of-state corporations." (Pls.' Mem. Supp. Mot. to Exclude 16, ECF No. 337.) The plaintiffs further assert that Scales' opinion "consists of legal conclusions." (*Id*. at 17.) I disagree.

The complaints raised by the plaintiffs here are properly handled through the presentation of contrary evidence and cross-examination, not by exclusion. Scales' phrasing of the question is of no moment in a *Daubert* analysis. Expert testimony is admissible if it is relevant and reliable, and the fact that the plaintiffs disagree with Scales' interpretation of the issue does not require exclusion. Scales' opinion is certainly relevant, as it is probative of the intentions of the parties to the 1929 Ritter deed, and it appears to be reliable, given his qualifications and report. If

-16-

Plum Creek/Highland believe that Scales' analysis is misguided, they are free to challenge his opinions at trial.

Plum Creek/Highland further argue that Scales' testimony should be excluded because "[n]othing in a geologist's profession or training qualifies him to offer an opinion on the interpretation and meaning of a deed, or of the mindset of individuals who lived over ninety years ago." (Pls.' Mem. Supp. Mot. to Exclude 17, ECF No. 337.) However, in making this assertion, the plaintiffs ignore the fact that Scales is more than a geologist: he is also a natural historian, with knowledge of the naming conventions historically prevalent in the area in question. I therefore decline to exclude his testimony on this ground. The plaintiffs may choose to attack Scales' opinion via cross-examination and contrary evidence, and it will be for the jury to determine whether it finds him credible. *Lowe*, 65 F.3d at 1142.

I find it important to distinguish this ruling regarding Scales' testimony from my above ruling regarding the testimony of Keuling-Stout, Rogers, and Warner. Keuling-Stout, Rogers, and Warner are attorneys whose opinions relate strictly to the meaning and legal effect of the deeds at issue. Scales, by contrast, is a geologist and natural historian, and his opinion relates to the geography and history of the area — which is probative of the intentions of the parties to the deeds — rather than to the legal effect of the deeds themselves.

My ruling regarding Scales' testimony is best understood through a comparison with my ruling regarding Phillips' testimony. See *supra* at III.A.1 & A.2. Phillips is a land surveyor who purports to testify on two issues: whether knowledgeable people in the 1920s considered the Russell Fork and Levisa Fork to be tributaries of one another, and whether the 1924 and 1925 deeds to Big Sandy conveyed the gas estates to the land in question. I granted the motion to exclude Phillips' testimony on the legal effect of the deeds to Big Sandy because this opinion is a legal conclusion that would not be helpful to the jury. However, I denied the motion to exclude Phillips' testimony as to the likely mindset of a person in the 1920s because such testimony is evidence of the intentions of the parties to the deed and is not a mere legal conclusion. I now deny the motion to exclude Scales' testimony for the same reason. [7]

## B. Motions by Range/EQT.

The defendants, Range/EQT, have moved to exclude the expert testimony of six experts. The evidence to which these defendants object includes testimony by five expert witnesses proffered by Plum Creek/Highland and one expert witness proffered by Baker/Trivett/McGlothlin.

---

[7] There is no indication in Scales' report that he intends to testify as to the meaning of the 1929 Ritter deed "catchall" clause. However, I would caution Baker/Trivett/McGlothlin against attempting to elicit such an opinion at trial. See *infra* at III.B.3.

-18-

*1.*

First, Range/EQT seek to exclude the testimony of Plum Creek/Highland experts George McLean and Linda Tiller, two attorneys. McLean and Tiller will testify that the 1921 deed to G.B. Long reserved to Yellow Poplar only the gas estates for lands actually conveyed to Long, rather than all the gas estates previously reserved to Yellow Poplar. This testimony goes to the issue of whether the deeds executed in 1924 and 1925 conveyed the gas estates to Tracts 4, 10, and 11 to Big Sandy, Range/EQT's predecessor in interest.

The opinions of McLean and Tiller are legal conclusions regarding the legal significance of the 1921 Long deed, and such conclusion are inadmissible as unhelpful to the jury.[8] Furthermore, I have already found that both the 1921 Long deed and the 1929 Ritter deed are ambiguous. (Op. & Order 16, ECF No. 428); *supra* at III.A.2. Both McLean and Tiller purport to opine as to the meaning of the 1921 Long deed, and Tiller bases her opinion on an "assum[ed]" interpretation of the 1929 Ritter deed. (Report of Linda Tiller, Ex. 41 at 4, ECF No. 331-41.) By testifying as to the "correct" interpretation of these deeds, the opinions of these two experts invade the province of the court. Accordingly, I will grant Range/EQT's motion to exclude the testimony of McLean and Tiller as to the meaning of the deeds in this case.

---

[8] I provide a more detailed analysis of this issue *supra* at III.A.2.

Case 1:13-cv-00062-JPJ-PMS   Document 431   Filed 11/21/16   Page 19 of 24   Pageid#: 8362

Next, Range/EQT seek to exclude the testimony of Plum Creek/Highland expert James Gregory, a hydrologist. Gregory will testify that the Russell Fork is a tributary of the Levisa Fork and that Tracts 10 and 11 are thus located within the watershed of the Levisa Fork. (Report of James Gregory, Ex. 42 at 17, 21, ECF No. 331-42.) This testimony goes to the question of whether the gas estates of Tracts 10 and 11 were conveyed in the 1929 deed to W.M. Ritter.

Range/EQT argue that Gregory's testimony should be excluded because it supports an interpretation of the 1929 Ritter deed that is contrary to what Range/EQT considers to be the correct meaning of the deed. I disagree. The language of the Ritter deed is open to more than one reasonable interpretation, and presentation of contrary evidence is the very basis of our adversarial system.

Furthermore, Gregory's testimony is both relevant and reliable, and thus is admissible under *Daubert*. His opinion is relevant because it is probative of the likely intentions of the parties to the 1929 Ritter deed. His conclusions are based on U.S. Geological Survey maps, historical maps, scientific and technical books, and his own experience as an expert hydrologist. Range/EQT have argued only that Gregory's testimony is "unreliable" to the extent it contradicts their own interpretation of the 1929 Ritter deed; they have not presented evidence that

Gregory's methodology or conclusions are scientifically unreliable.  Accordingly, I will deny Range/EQT's motion to exclude Gregory's expert testimony.[9]

*3.*

Third, Range/EQT seek to exclude the testimony of Plum Creek/Highland expert Gregory Mullins, a geologist and surveyor.  Mullins will also testify that the Russell Fork is a tributary of the Levisa Fork and that Tracts 10 and 11 are located on a subwatershed of the Levisa Fork, and he will testify that the land in question "fall[s] within the description of the property" in the 1929 Ritter deed.  (Report of Gregory Mullins, Ex. 43 at 10-11, ECF No. 331-43.)

To the extent that Mullins purports to testify about the geology of the area, including whether the land in question is located within the watershed of the Levisa Fork, his testimony is admissible for the reasons described above.  See *supra* at III.B.2.  Mullins bases his opinion on U.S. Geological Survey maps, reports from the U.S. Engineer's Office, historical maps, and his own experience as an expert geologic and land surveyor.  His testimony is both relevant and reliable.

However, to the extent that Mullins opines that Tracts 10 and 11 "fall within the description of the property of the Gallie Friend [deed] to W.M. Ritter," (Report

---

[9]  There is no indication in Gregory's report that he intends to testify as to the meaning of the 1929 Ritter deed "catchall" clause.  However, I would caution Plum Creek/Highland against attempting to elicit such an opinion at trial.  See *infra* at III.B.3.

-21-

of Gregory Mullins, Ex. 43 at 10-11, ECF No. 331-43), his testimony is inadmissible. His opinion regarding the legal significance of the language of the deed is an unhelpful legal conclusion and invades the province of the court.[10]

Accordingly, I will deny Range/EQT's motion to exclude Mullins' testimony regarding the geology of the area, but grant the motion to the extent Mullins purports to opine on the meaning of the 1929 Ritter deed.

*4.*

Range/EQT next seek to exclude the testimony of Plum Creek/Highland expert Terry Waller, a land surveyor. Waller will testify that Tracts 10 and 11 "are in Buchanan County . . . are located within the watersheds of the Levisa Fork and its tributaries, and [were] therefore subject to the conveyance language" in the 1929 Ritter deed. (Report of Terry Waller, Ex. 46 at 3, ECF No. 331-46.)

My decision regarding Waller's testimony is the same as my decision regarding Mullins' testimony, for the same reasons. *Supra* at III.B.3. Waller bases his opinion on U.S. Geological Survey maps and his own experience as a land surveyor. His testimony is both relevant and reliable. Thus, to the extent he purports to testify about the geography of the area and the location of the land at issue, his testimony is admissible. However, to the extent that Waller opines that

_____

[10] *See supra* at III.A.2 & B.1.

Tracts 10 and 11 were actually conveyed by the 1929 Ritter deed, his testimony is inadmissible.

Accordingly, I will deny Range/EQT's motion to exclude Waller's testimony regarding the geography of the area, but grant the motion to the extent that Waller purports to opine on the meaning of the 1929 Ritter deed.

<em>5.</em>

Finally, Range/EQT seek to exclude the testimony of Baker/Trivett/McGlothlin expert Harris Warner, an attorney. Warner will testify that the 1929 Ritter deed "did <u>not</u> include or convey any interest in . . . Tract 10 or Tract 11" and that the 1924 and 1925 Big Sandy deeds "are not ambiguous and do not include . . . Tract 10 and Tract 11." (Report of Harris Warner, Ex. 47 at 4, ECF No. 331-47.)

For the reasons described *supra* at III.A.2, I will grant Range/EQT's motion to exclude Warner's testimony.

IV.

It is accordingly **ORDERED** that, of Plum Creek/Highland's Motions to Exclude Certain Evidence (ECF No. 336), the Second Motion is GRANTED; the First, Fourth, and Fifth Motions are DENIED; and the Third Motion is GRANTED IN PART and DENIED IN PART. It is further **ORDERED** that Range/EQT's Motion to Exclude Opposing Experts (ECF No. 332) is GRANTED with respect to

-23-

Requests 3A and 4; DENIED with respect to Request 3B; and GRANTED IN PART and DENIED IN PART with respect to Requests 3C and 3D.

ENTER:  November 21, 2016

/s/  James P. Jones
United States District Judge